payment of the debts of Charles Stumpf, deceased, will be sufficient for the payment of such debts and the costs of the proceedings in the surrogate's court; and that, within 30 days thereafter, the purchaser, Winsor Boice, may pay said sum, so fixed, into the said surrogate's court, to the credit of the proceedings therein; and that thereupon the surrogate distribute the whole fund applicable to the payment of said debts, as if·realized from a sale under his decree therein; and that, upon such payment by the purchaser, such sale be stayed until distribution made, and, when made, be stayed perpetually; if the purchaser shall not comply, then his application to be dismissed, with costs, in which case our further order is that the respondent have costs of this appeal. All concur, except MERWIN, J., dissenting.

---

(6 App. Div. 70.)

### PEARL v. MACAULEY.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

1. NEGLIGENCE—HORSE IN STREET UNATTENDED.
    It is negligence to allow a horse to run unattended in the street.

2. SAME—EVIDENCE.
    In an action for injuries caused by defendant's horse while running unattended in the street, defendant gave evidence that the horse was used by him in his business; that it was quiet and gentle; that the driver had come to defendant's shop, and tied the horse with a rope to an elevated railroad post; that, while the wagon was being unloaded, the horse ran away; and that the horse was caused to run by some boys striking him with pebbles from a sling. It also appeared that the rope with which the horse was tied was somewhat worn. Plaintiff's sister testified that defendant said to her that his men had been careless, and left the horse untied, and that that was what made him run away. Held, that defendant's negligence was a question for the jury.

Appeal from city court of Brooklyn, trial term.

Action by Hannah Pearl against Charles R. Macauley to recover damages for personal injuries. From a judgment entered on a verdict in favor of plaintiff for $2,500, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

William C. Beecher, for appellant.
Charles J. Patterson, for respondent.

CULLEN, J. This action is to recover for personal· injuries. The plaintiff, while crossing a street in the city of Brooklyn, was knocked down and run over by the defendant's horse and wagon. At the time of the accident the horse and wagon were unattended by any person. On proof of these facts, the plaintiff presented a prima facie case of negligence on the part of the defendant. Unger v. Railroad Co., 51 N. Y. 497; Doherty v. Sweetser, 82 Hun, 556, 31 N. Y. Supp. 649. The defendant was, therefore, called upon to explain how it was that the horse was running at large

without fault on his part. In explanation of the occurrence, evidence was given by the defendant that he was the occupant of a furniture shop on Fifth avenue, upon which street there is an elevated railroad; that the horse was used by him in his business, and was quiet and gentle; and that he (the defendant) was absent at the time of the accident. Evidence was given by a brother of the defendant that he was working for the defendant, and that one Herman was the driver of the wagon; that he and Herman had come to the shop with the horse and wagon; that Herman tied the horse with a rope to an elevated railroad post; that they had unloaded the wagon, and were carrying some articles into the shop, when they heard a cry, and found that the horse had run away. Evidence was given by another witness that he was across the street when the horse broke away, and that he saw some boys fire pebbles from slings, which struck and caused the horse to bolt. The evidence of the defendant showed that the tie rope had been broken. This rope was produced in court. The rope was frayed and worn. The defendant testified that it was a "dead" rope, though he said it was strong enough to use, and that it broke part of the headstall when the horse ran away. The driver was not produced as a witness. No testimony was given contradicting the statements of these witnesses, except that of a sister of the plaintiff, who testified that the defendant stated to her that his men had been careless, and had left the horse untied, and that that was what made him run away. The accident happened on the 23d day of November, about half past 5 o'clock. Evidence was given to show that it was entirely dark at the time.

On this evidence the question presented is whether the defendant so clearly established his freedom from fault as to require the court to direct a verdict in his favor. We think not. The story of the witness who testified to the horse being struck with pebbles flung by the boys contained improbabilities that required its credibility to be submitted to the jury. The witness stood on the further side of the street, and testified that he not only saw the pebbles thrown, but saw them strike the horse. Other witnesses testified that, at the time, it was absolutely dark. There was also a fair question, on the evidence, as to the sufficiency of the rope. Added to this is the alleged admission by the defendant that the horse was not tied at all. The case was, therefore, properly one for the jury.

The trial court was asked to charge that, if the running away was caused by the horse being hit by the stones, it was immaterial whether the horse was tied or not, and in like case it was immaterial whether the rope was strong or weak. Both of these requests were refused. It was the duty of the defendant's servants to have tied the horse, if he was left unattended in the streets of a populous city. The failure to do so would *justify a finding of negligence.* Doherty v. Sweetser, supra; Norris v. Kohler, 41 N. Y. 42. Hence, if the jury found that, had the horse been properly secured, he would not have run away, whether from being hit by the pebbles or from other causes, then the failure to secure the

horse was, within all the authorities, a contributing cause of the injury.

The judgment and order appealed from should be affirmed, with costs. All concur.