THOMAS HACKETT, Appellant, *v.* LENOX SAND AND GRAVEL COMPANY, Respondent.

First Department, April 4, 1919.

**Negligence — injury in attempting to stop runaway horse — prima facie case — evidence — questions for jury.**

Where in an action for personal injuries sustained in attempting to stop a horse belonging to the defendant which was running away, it appeared that the horse had been tied within ten or fifteen feet of a revolving locomotive crane operated by one of defendant's employees; that a brewery wagon had come near the horse making sufficient noise to frighten him, and that it was doubtful whether a new or old rope had been used, the questions as to whether the horse was securely tied, and as to whether it was negligently tied in proximity to the revolving crane should have been presented to the jury in view of the *prima facie* case made by the fact that the horse was running away, which fact the defendant was bound to satisfactorily explain.

APPEAL by the plaintiff, Thomas Hackett, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 3d day of December, 1918, upon the verdict of a jury rendered by direction of the court dismissing the complaint, and also from an order denying plaintiff's motion for a new trial made upon the minutes.

*S. Lawrence Miller,* for the appellant.

*Theodore H. Lord* of counsel [*Fred H. Rees* with him on the brief], for the respondent.

SMITH, J.:

The plaintiff was injured in attempting to stop a runaway horse which was running upon the sidewalk and threatening the lives of some school children. The fact that the horse was running away made a *prima facie* case of negligence. This called upon the defendant to give satisfactory reason why the horse was unattended. In answer to this *prima facie* case the defendant's president swore that he tied the horse to an iron post upon one of the docks in the city. There is evidence to the effect that the horse was there tied with a rope two

inches thick which went around the neck of the horse, through the two rings of the bit, and was tied to the post. The horse broke this rope near the snap, according to the defendant's testimony and ran away to the place where he was found by the plaintiff.

The evidence to the effect that this horse was so tied was given by the president of the defendant and by an employee, Birdsall, and by one Green, who was a former employee, who swore to the size of the rope and that it was procured about three weeks before. Birdsall, who saw the horse jerk away from the post where it was tied, swore that it raised its head twice and broke the rope and ran. I think we may assume that a rope two inches thick, or even of a smaller size, which was new, could not be so easily broken. This horse was usually held in the street by fastening the rope to a weight which was placed by the curbing. The evidence leaves it in doubt whether a new rope was used at this time or whether an old rope upon which no weight was attached might have been used for the purpose of tying the horse to the post.

By the defendant's evidence it further appears that the horse was tied within ten or fifteen feet of a revolving locomotive crane, operated by one of the defendant's employees. The witness Birdsall, the defendant's employee, swears that a brewery wagon came upon the dock and made so much noise that it so frightened the horse as to cause it to jerk away and run. The jury might have said that it is more probable that the horse was frightened by this locomotive crane, which was only ten or fifteen feet from the horse and was revolving and being turned at the time that the horse jerked away. Both the question, therefore, as to whether the horse was securely tied and the question as to whether it was negligently tied in the proximity of this revolving crane were questions which the court was not authorized to take from the jury in view of the *prima facie* case made by the fact that the horse was running away, which fact the authorities hold must be satisfactorily explained by the defendant. (*Marceau* v. *Rutland R. R. Co.*, 211 N. Y. 203; *Ferris* v. *Sterling*, 214 id. 253; *Maxwell* v. *Peters Co.*, 219 id. 597; *Furlong* v. *Winne & McKain Co.*, 166 App. Div. 882.)

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN and DOWLING, JJ., concurred; SHEARN, J., concurred in result.

Judgment reversed and new trial ordered, with costs to appellant to abide event.